**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff - Appellee*,<br>v.<br>TODD ERIC MUMMA, AKA Todd E. Mumma, AKA Todd Arecksen, AKA Todd Ericksen,<br>*Defendant - Appellant*. | No. 24-6987<br>D.C. No. 1:20-cr-00168-JLT-SKO-1<br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Jennifer L. Thurston, District Judge, Presiding

Argued and Submitted December 3, 2025
San Francisco, California

Filed October 20, 2026

Before: Ryan D. Nelson, Daniel P. Collins, and Lawrence VanDyke, Circuit Judges.

Opinion by Judge Collins

## SUMMARY*


### Criminal Law

In a case in which Todd Mumma was convicted and sentenced for sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a), the panel (1) affirmed the district court's denial of Mumma's motion to dismiss the indictment; (2) affirmed the district court's "personal forfeiture money judgment" in the amount of $160,000, which represented the proceeds from the sale of Mumma's house where he committed the offense; and (3) vacated the district court's restitution order and remanded to the district court to recalculate the amount of restitution.

Mumma argued that the district court erred in denying his motion to dismiss the indictment. According to Mumma, the indictment provided insufficient notice, because its language was too barebones and failed to allege any specific facts that would establish the elements of the charged offense. The panel rejected this contention because the indictment included the requisite jurisdictional allegation, alleged each of the elements set forth in the statutory text, and contained only the particular statutory alternatives that were relevant to the facts of Mumma's offense. The identity of the victim need not be included in the indictment so long as the indictment delineates the elements of the crime, including any elements specifying what was done to the victim. And the indictment was not deficient by failing to describe, with specificity, the manner in which Mumma "employed" or "used" a minor to engage in sexually explicit


* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conduct for purposes of producing a visual depiction. Accordingly, the district court properly denied Mumma's motion to dismiss the indictment.

Mumma also contended that the district court committed reversible error by failing to inquire, as assertedly required by Federal Rule of Criminal Procedure 32.2(b)(5)(A), whether the parties wanted the jury to determine the forfeitability of Mumma's house. The panel disagreed and affirmed the forfeiture order.

- The panel did not need to decide whether Mumma was correct in contending (1) that he had a right to a jury trial on the issue of the forfeitability of Mumma's house and (2) that the district court erred in failing *sua sponte* to inquire whether the parties wanted the jury to determine that issue. The panel concluded that, even assuming *arguendo* that Mumma was correct on these points, any error was harmless.

- The panel explained that the rationale set forth in in *Neder v. United States*, 527 U.S. 1 (1999), for applying harmless error analysis in a missing-element case applies equally in this case in which the jury decided all of the elements on the first component of the forfeitability determination (that Mumma was convicted of violating § 2251) but was never instructed to make a finding as to the last element (whether Mumma's home was "used to commit" the offense). The panel therefore applied *Neder*'s harmless error standard, but with the more forgiving standard for nonconstitutional errors on direct appeal from federal convictions. Under this standard, any error here was harmless because it was

> uncontested and indisputable that, if Mumma committed the offense, he used his home to do so.

Mumma also challenged the district court's determination of the amount of restitution. Mumma contended, and the Government conceded, that the district court made an apparent mathematical error in totaling up the components of the restitutionary requests made by the victim. The Government argued that any issue concerning the calculation of the amount of restitution is moot because Mumma has already paid the entire restitution award and it has been disbursed to the victim. The panel explained that the possibility that a ruling from this court that the amount of restitution was overpaid would give Mumma an offset against any damages that the victim might recover in her pending civil suit against Mumma is enough to save this issue from mootness. Accordingly, the panel vacated the restitution order and remanded to the district court with instructions to correct this mathematical error. The panel also directed the district court on remand to clarify and resolve a discrete issue concerning the victim's temporary housing expenses.

## COUNSEL

McKenzie Hightower (argued), Trial Attorney; Child Exploitation and Obscenity Section; Criminal Division; Josh A. Goldfoot, Deputy Assistant Attorney General; Matthew R. Galeotti, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; David L. Gappa, Assistant United States Attorney; Kimberly A. Sanchez, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Fresno, California; Kevin C. Khasigian, Assistant United States Attorney; Office of the United States Attorney, United States Department of Justice, Sacramento, California; for Plaintiff-Appellee.

Kevin P. Rooney (argued), Hammerschmidt Law Corporation, Fresno, California, for Defendant-Appellant.

# OPINION

COLLINS, Circuit Judge:

Defendant Todd Mumma appeals his conviction and sentence for sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a). After a jury found Mumma guilty of this offense, the district court imposed a 252-month prison term and ordered Mumma to pay restitution to the victim, M.V., in the amount of $71,200. The district court also entered a "personal forfeiture money judgment" against Mumma in the amount of $160,000, which represented the proceeds from the sale of Mumma's house, where he had committed the offense. On appeal, we reject Mumma's challenge to the adequacy of the indictment, and we further conclude that any error by the district court in failing to ask the parties whether the forfeitability of Mumma's house should be submitted to the jury was harmless. We conclude, however, that at least one of Mumma's challenges to the calculation of the restitution award is meritorious, and we therefore vacate the restitution order and remand to the district court to recalculate the amount of restitution in accordance with our instructions. We therefore affirm in part, vacate in part, and remand.

## I

We begin by summarizing the trial evidence concerning the offense conduct before then setting forth the procedural history of the case.

### A

For several years, Defendant Todd Mumma resided with his then-wife and his two stepdaughters in a home in Fresno, California. After being contacted by a private investigator

who turned over a memory card showing Mumma's older stepdaughter, M.V., being surreptitiously recorded in her bedroom as she undressed, law enforcement agents obtained a warrant to search Mumma's home. The search, which occurred on May 9, 2020, revealed that an iPhone-style charger containing a hidden camera was plugged into the wall under a table in M.V.'s bedroom. Forensic examination of the memory card supplied by the private investigator, of the charger/camera found in M.V.'s bedroom, and of various other items obtained during the investigation (including Mumma's electronic devices) disclosed numerous videos recorded by the hidden camera between 2017 and 2019. These included multiple videos of M.V. undressing or naked. On several occasions, the camera also captured Mumma entering M.V.'s room to remove the device.

The forensic examination also revealed that Mumma had organized the videos by labeling them "good" or "great," followed by numbers. The "great" clips showed M.V. "fully nude or nude from the waist down," and in the majority of them, she was bending over. Mumma had also used the video footage to create still images of M.V. in the nude. He did this by pausing the "good" and "great" videos on his computer and taking screenshots or pictures of the screen that focused on M.V.'s pubic area or anus. Dozens of those screenshots were saved in an application on Mumma's phone called "Private Calculator Free," which outwardly appeared to be an ordinary calculator app but in fact functioned as a hidden media vault. The trial evidence indicated that Mumma had repeatedly opened and viewed the media-vault application on his phone.

### B

On September 24, 2020, Mumma was indicted on a charge of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a).[1] The indictment also included a forfeiture allegation under 18 U.S.C. § 2253, seeking forfeiture of "any property, real or personal, used or intended to be used to commit or to promote the commission of" the charged offenses, or "any property traceable to such property." The forfeiture allegation specifically alleged that, if "any property subject to forfeiture" had been sold to a third party by Mumma, then the Government was "entitled to forfeiture of any other property of the defendant, up to the value of the property subject to forfeiture, including but not limited to a personal forfeiture money judgment."

In November 2022, Mumma moved to dismiss the indictment on the ground that it failed to provide adequate notice of the charged offenses. The district court denied that motion in a written order on January 20, 2023, concluding that the indictment adequately "inform[ed] [Mumma] of the essential elements of the offenses," including by apprising him of the approximate time and place of the alleged misconduct, the nature of the conduct and "how it occurred," and the basis for federal court jurisdiction.

The case proceeded to a jury trial in March 2024. At no point before the end of that trial did the district court ask whether either party wished for the jury to consider the forfeitability of any specific item of property, including Mumma's house (which allegedly had been used to commit

[1] The indictment also charged Mumma with a second count, for allegedly receiving a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). That charge, however, was voluntarily dismissed by the Government before trial.

the charged offense and which had been sold by Mumma in April 2022). For their part, neither the Government nor Mumma requested that that the jury be instructed concerning the forfeitability of any specific property, and neither the jury instructions nor the verdict form addressed forfeiture. The jury found Mumma guilty on the § 2251 count.

On September 24, 2024, the Government filed an application for a "criminal money judgment for $410,000," which the Government contended was "an amount that is a portion of the proceeds from the sales of the defendant's residence . . . and business . . .[,] since they were properties that facilitated the defendant's sexual exploitation of a minor." The Government noted that the home and business had both been sold before trial. The district court initially signed the Government's proposed order of forfeiture two days later, without hearing from Mumma. But, on Mumma's motion, the court promptly vacated that order and set a briefing schedule to address the subject of forfeiture. In his subsequent opposition to the Government's forfeiture request, Mumma argued, *inter alia*, that he had not validly waived his right, under Federal Rule of Criminal Procedure 32.2(b), to a jury trial on the forfeitability of his house and business. In particular, Mumma argued that Rule 32.2(b)(5)(A) required the district court *affirmatively* to inquire whether the issue of forfeitability should be submitted to the jury, and that the court's failure to do so meant that Mumma's rule-based right to a jury trial on that issue had not been validly waived.

In November 2024, Mumma was sentenced to 252 months in prison, followed by 10 years of supervised release. The district court also imposed a forfeiture money judgment in the amount of $160,000, representing only the proceeds from the sale of Mumma's residence, where the offense had

taken place. Finally, as relevant here, the district court ordered Mumma to pay $71,200 in restitution to M.V.

Mumma timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

Mumma argues that the district court erred in denying his motion to dismiss the indictment. According to Mumma, the indictment provided insufficient notice, because its language was too barebones and failed to allege any specific facts that would establish the elements of the charged offense.[2] Reviewing the sufficiency of an indictment de novo, *see United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016), we reject this contention.

An "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also* FED. R. CRIM. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."). We have stated that, for both indictments and informations, "employing the statutory language alone . . . is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished." *United*

[2] Mumma thus has not contended that his underlying conduct in placing a hidden camera in his stepdaughter's bedroom does not fall within the scope of the offense defined in § 2251(a). Rather, his challenge to the indictment rests solely on the contention that insufficient factual details about the underlying conduct were included in the text of the indictment, thereby providing inadequate notice.

*States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) (citation omitted). Accordingly, "[i]n cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (simplified).

Here, Mumma's indictment closely tracked the relevant statutory language, and it included all of the relevant elements set forth in § 2251. Specifically, count one of the indictment charged as follows:

> [B]eginning on an unknown date no later than in approximately May 2017, and continuing through approximately April 19, 2020, in the County of Fresno, State and Eastern District of California, [Defendant Mumma] did knowingly employ and use a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and the visual depiction was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, and attempted to do so, all in violation of Title 18, United States Code, Sections 2251(a) and (e).

As relevant here, § 2251(a) states that, if the federal jurisdictional predicate is satisfied, it is an offense to "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such

conduct." 18 U.S.C. § 2251(a).[3] Mumma's indictment includes the requisite jurisdictional allegation, and it also alleges each of the elements set forth in the statutory text.

Moreover, while the statute lists a number of alternative ways in which the offense can be committed or the federal jurisdictional predicate satisfied, the indictment's language here notably contains only those particular alternatives that are relevant to the facts of Mumma's offense. Thus, consistent with the surreptitious nature of Mumma's underlying conduct, the indictment charges only that Mumma "employ[ed]" and "use[d]" a minor to engage in

---

[3] In full, § 2251(a) provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), [1] if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, [2] if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or [3] if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (brackets added).

sexually explicit conduct for the purpose of producing a visual depiction, and not that Mumma had sought, for instance, to "entice[] or coerce[]" a minor into posing for such a recording. 18 U.S.C. § 2251(a). As to the jurisdictional element, the statute contains three alternatives (set forth in three separate clauses, each beginning with "if," *see supra* note 3), and the indictment relies only on the second of these three alternatives, namely the theory that any "visual depiction" created during the offense "was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce." In addition, the indictment also alleged that the offense occurred in Fresno County, and it specified the approximately 35-month period over which the offense conduct occurred. These allegations were sufficient under the standards set forth above. *See Woodruff*, 50 F.3d at 676–77.

Mumma's arguments to the contrary are unavailing. He asserts that the indictment was deficient because it did not identify the referenced "minor" victim, but we have held that the identity of the victim of a crime need not be included in the indictment so long as the indictment "delineate[s] the elements of the crime," including any elements specifying what was done to the victim. *United States v. Morlan*, 756 F.2d 1442, 1444–45 (9th Cir. 1985) (holding that, where the indictment stated that a bank robber assaulted bank "employees" and a "bank teller," an assault charge in violation of 18 U.S.C. § 2113(a) and (d) was properly alleged, even though no particular employees or tellers were named in the indictment).

Nor was the indictment deficient by failing to describe, with specificity, the manner in which Mumma "employed" or "used" a minor to engage in sexually explicit conduct for

purposes of producing a visual depiction. 18 U.S.C. § 2251(a). In contrast to *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. 2017), on which Mumma heavily relies, the sole remaining count in the indictment here alleged a *single* charge focused on a *single* theory—namely, that Mumma had "used" or "employed" a minor in the prohibited manner during the relevant time period. *See id.* at 72 (noting that, in *Hillie*, the overlapping allegations between the various counts, each of which incorporated *all* of the statutes' alternative forms of committing the offenses in generic terms, made "it impossible to discern—and therefore to distinguish between—the conduct underlying each separate count"). And to the extent that *Hillie* suggests that reliance on statutory terms such as "use" is insufficiently specific in the context of a § 2251(a) charge, *id.* at 74–75, we disagree. Given the nature of the charged conduct at issue—using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct—this is not the sort of offense for which distinguishing culpable conduct from innocent conduct "depend[s] . . . crucially upon such a specific identification of fact," such that, for notice purposes, there might be a "special need for particularity in charges brought under" the statute. *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (simplified). This case instead falls within the general rule that "an indictment parroting the language of a federal criminal statute is often sufficient." *Id.* at 109.

Accordingly, we conclude that the district court properly denied Mumma's motion to dismiss the indictment.

## III

Mumma also contends that the district court committed reversible error by failing to inquire, as assertedly required

by Federal Rule of Criminal Procedure 32.2(b)(5)(A), whether the parties wanted the jury to determine the forfeitability of Mumma's house. We disagree and affirm the district court's forfeiture order.[4]

### A

Under 18 U.S.C. § 2253, "[a] person who is convicted of an offense under this chapter involving a visual depiction described in section 2251 . . . of this chapter . . . shall forfeit to the United States such person's interest in," *inter alia*, "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property." *Id.* § 2253(a)(3). Forfeitures under this provision are subject to "Section 413 of the Controlled Substances Act (21 U.S.C. 853) with the exception of subsections (a) and (d)," *id.* § 2253(b), which means that, for any forfeitable property that has been sold by the defendant to a third party, "the court shall order the forfeiture of any other property of the defendant, up to the value" of that forfeitable property, 21 U.S.C. § 853(p)(1), (2).[5]

[4] Mumma also argues, for preservation purposes only, that he had a constitutional right to have the jury make the forfeitability determination. As Mumma acknowledges, controlling precedent dictates that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." *Libretti v. United States*, 516 U.S. 29, 49 (1995); *see also United States v. Phillips*, 704 F.3d 754, 769–70 (9th Cir. 2012).

[5] The actual wording of § 413(p) states that its substitute-property rule applies to "any property described in subsection (a)" that is sold by the defendant to a third party. 21 U.S.C. § 853(p)(1). The fact that "subsection (a)" of § 413 does *not* apply to forfeitures under § 2253(a) does not mean that § 413(p)'s substitute-property rule therefore does not apply here. Congress specified that *only* subsections (a) and (d)—which

The procedures governing forfeiture in federal criminal proceedings are set forth in Federal Rule of Criminal Procedure 32.2. In any case in which the requisite forfeiture notice has been included in the indictment, the district court "must determine," "[a]s soon as practical after a verdict or finding of guilty," "what property is subject to forfeiture under the applicable statute." FED. R. CRIM. P. 32.2(b)(1)(A). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." *Id.* "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.*

As to the manner in which the court must make this determination, Rule 32.2 draws a distinction between cases involving "the forfeitability of specific property" and those involving only a money judgment. Specifically, the rule

---

respectively (1) describe the scope of forfeiture under the drug laws and (2) establish a rebuttable presumption applicable to certain alleged proceeds of drug trafficking—would not apply to forfeitures under § 2253(a); it did not likewise carve out subsection (p). Section 2253(b) should thus be understood as incorporating the substitute-property authority in § 413(p) into the child pornography context, such that the same rule that § 413(p) applies to forfeitures under § 413(a) also applies, *mutatis mutandis*, to forfeitures under § 2253(a). We therefore reject the Government's suggestion that § 413(p)'s reference to subsection (a) should instead be understood as effectively *undoing* Congress's exclusion of § 413(a), such that the drug laws' differently-described scope of forfeiture set forth in subsection (a) *would* be made applicable to child pornography cases involving substitute property. Congress pointedly did not incorporate the drug laws' scope-of-forfeiture provision into § 2253(b), and it would make no sense to read § 2253(b)'s incorporation of the substitute-property authority in § 413(p) as undoing that express exclusion.

provides that, "[i]n any case tried before a jury, if the indictment . . . states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained *to determine the forfeitability of specific property* if it returns a guilty verdict." FED. R. CRIM. P. 32.2(b)(5)(A) (emphasis added). If a party elects to have the jury determine forfeitability, then a verdict form is to be prepared "listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." FED. R. CRIM. P. 32.2(b)(5)(B). The rule contains no such comparable jury trial right for the other type of forfeiture determination listed in the rule, namely, the determination of the amount of money to be paid when "the government seeks a personal money judgment." FED. R. CRIM. P. 32.2(b)(1)(A).

After the Government filed its post-trial request for a forfeiture determination based on the moneys realized by Mumma from the sale of his home and business, Mumma objected on the ground that he had a right to a jury determination of the forfeitability of his home and business and that the court had failed to make the requisite inquiry, before the close of the trial, whether any party wanted the jury to determine the forfeitability of those specific items of property. The district court ultimately rejected this argument, concluding that Mumma had no jury trial right and that, even if he did, the court's failure to make any inquiry of the parties on that score should be disregarded. The court, however, decided to order forfeiture only of the proceeds from the sale of Mumma's home and not of his business.

On appeal, Mumma renews his argument that, because the sole forfeiture in this case was based on the premise that his home had been "used to commit" the offense, 18 U.S.C. § 2253(a)(3), he was entitled under Rule 32.2 to a jury determination of "the forfeitability of [that] specific property," FED. R. CRIM. P. 32.2(b)(5)(A), and that the jury therefore should have determined "whether the government ha[d] established the requisite nexus between th[at] property and the offense committed by [Mumma]," FED. R. CRIM. P. 32.2(b)(5)(B). Mumma also argues that reversal is required, because the district court conceded that, if Mumma had a jury trial right, the court had "fail[ed] to inquire as to whether Mr. Mumma intended to waive his right related to any jury determination as to forfeiture," as required by the rule. *See* FED. R. CRIM. P. 32.2(b)(5)(A) ("[T]he court *must* determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." (emphasis added)); *id.*, advis. comm. note (2009 amend.) (stating that this court-inquiry requirement was added "to avoid an inadvertent waiver of the right to a jury determination").

In response, the Government contends that, because the *ultimate* relief sought here was simply a "personal money judgment" and not an order forfeiting "specific property," FED. R. CRIM. P. 32.2(b)(1)(A), the district court correctly held that there was no right to a jury determination of forfeitability under the rule, regardless of whether the underlying basis of the requested money judgment was that a "specific property" was forfeitable as an instrumentality. And although the Government did not raise the issue in its answering brief, it also contended at oral argument that no jury trial right existed here for the alternative reason that the

forfeiture in this case fell within the district court's authority under Rule 32.2(e)(1)(B) to "enter" or "amend" an order of forfeiture to "include" the home-sale proceeds as "substitute property," even though there was no prior forfeiture determination as to which that substitute property could be "include[d]." FED. R. CRIM. P. 32.2(e)(1)(B); *see also* FED. R. CRIM. P. 32.2(e)(3) ("There is no right to a jury trial under Rule 32.2(e)."). Finally, the Government argues that, even if the district court violated Rule 32.2's obligation to inquire about a jury determination of forfeitability, any failure to follow this "time-related directive" does not deprive the district court of authority to order forfeiture and should therefore be deemed to be harmless. *See United States v. Williams*, 720 F.3d 674, 701 & n.21 (8th Cir. 2013).

We ultimately need not decide whether Mumma is correct in contending (1) that he had a right to a jury trial on the issue of the forfeitability of Mumma's house and (2) that the district court erred in failing *sua sponte* to inquire whether the parties wanted the jury to determine that issue. As we explain in the next section, even assuming *arguendo* that Mumma is correct on these points, we conclude that any error was harmless, although our reasoning differs from that given by the district court and the Government.

**B**

We have expressly held that a district court's "fail[ure] to follow the procedure outlined in Rule 32.2(b)(5)(A)" is subject to harmless error review. *United States v. Mancuso*, 718 F.3d 780, 799 (9th Cir. 2013); *see also* FED. R. CRIM. P. 52(a). As noted, we conclude that any error here was harmless.

In *Mancuso*, we faced a nearly identical fact pattern in which the Government sought forfeiture of the proceeds of

the sale of the defendant's home, which the Government contended was forfeitable because the home had been used to commit the relevant offense. *Mancuso*, 718 F.3d at 798–99. Without discussing the merits of any underlying issue concerning whether the defendant *had* a right to a jury trial on the forfeitability of his home under the rule, we nonetheless stated that "the government properly concedes that the district court failed to follow the procedure outlined in Rule 32.2(b)(5)(A)," but we also concluded "that any error was harmless." *Id.* at 799. In explaining why the error was harmless in that case, we noted that the record affirmatively made clear that the defendant was not requesting a jury trial on the forfeitability issue, inasmuch as defense counsel at one point affirmatively stated on the record that she "understood" that the issue of forfeitability would be determined by the court rather than the jury. *Id.* at 788, 799. Mumma contends that such on-the-record evidence of the defendant's position is the *only* circumstance in which a failure to inquire may be found to be harmless, but nothing in *Mancuso* or in the law supports that view.

On the contrary, we conclude that, even assuming that Mumma would have chosen a jury if asked and that the asserted violation of the court's rule-based obligation to inquire therefore had the effect of denying Mumma his asserted right to a jury trial under the rule, any error may still be harmless. The resulting scenario, in our view, is directly analogous to the situation in which the court fails to include an element of an offense in the jury instructions, such that the jury never makes a finding as to that element. The Supreme Court has squarely held that such errors are amenable to harmless error analysis, *see Neder v. United States*, 527 U.S. 1 (1999), and its reasoning is fully applicable here.

In *Neder*, the district court failed to submit the element of materiality to the jury in its instructions describing the elements of the offenses of mail, wire, and bank fraud and the offense of filing false tax returns. 527 U.S. at 6. On appeal, the parties agreed that materiality was an element of the tax charges that should have been included in the instructions, and the Supreme Court ultimately held that materiality was also an element of the mail, wire, and bank fraud charges and should likewise have been submitted to the jury. *Id.* at 8, 20. But the Court nonetheless held that the resulting failure to submit this element to the jury was subject to harmless error analysis. *Id.* at 19–20, 25. As the Court explained, instructional error concerning the applicable substantive law "differs markedly from the constitutional violations [the Court] ha[s] found to defy harmless-error review." *Id.* at 8. In contrast to the "structural" errors that the Court has previously recognized, such as the "complete denial of counsel," a "biased trial judge," "denial of [a] public trial," or a "defective reasonable-doubt instruction," "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 8–9. The Court therefore held that harmless error analysis applies in a missing-element case, just as it would in a case involving an incorrectly described element. *Id.* at 9–10.

Having held that harmless error review applies in a missing-element case, *Neder*, 527 U.S. at 15, the *Neder* Court then proceeded to set forth the standard for determining whether such an error was harmless. The Court held that a failure to instruct the jury as to an element of the offense is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty

absent the error." *Id.* at 18. For example, the Court explained, if, after a "thorough examination of the record," "a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error," the error is harmless. *Id.* at 17, 19. By contrast, "for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—[a reviewing court] should not find the error harmless." *Id.* at 19.

The Court proceeded to apply that standard to the tax charges in *Neder*, and it concluded that the failure to instruct the jury as to materiality with respect to those charges was indeed harmless.[6] The Court emphasized that Neder "did not contest the element of materiality at trial" and did not "suggest [on appeal] that he would introduce any evidence bearing upon the issue of materiality if so allowed"; indeed, he did not argue to the Court "that his false statements of income could be found immaterial." *Neder*, 527 U.S. at 15–16. Moreover, the evidence at trial showed that Neder had falsely failed to report over $5 million in income, and the Court held this evidence "incontrovertibly establishes that Neder's false statements were material to a determination of his income tax liability." *Id.* at 16. Because the Court "conclude[d] beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the

[6] The court of appeals in *Neder* had only addressed the harmlessness issue as to the tax charges, because it held that materiality was not an element of the mail, wire, and bank fraud charges. 527 U.S. at 6–7. After the Supreme Court reversed that latter ruling, it remanded those counts to the court of appeals for it to apply *Neder*'s harmless error standards to those charges in the first instance. *Id.* at 7, 25.

same absent the error," the failure to submit the issue of materiality to the jury was harmless. *Id.* at 17.

*Neder*'s rationale for applying harmless error analysis in a missing-element case applies equally here. Under the relevant forfeiture provisions, as applicable here, the forfeitability of Mumma's house—which is the issue that Mumma states should have been submitted to the jury—requires (1) that Mumma be convicted of violating § 2251; and (2) that Mumma's house was "used or intended to be used to commit" that offense. 18 U.S.C. § 2253(a)(3). The jury decided all of the elements on the first component of this forfeitability determination, but it was never instructed to make a finding as to the last element, namely, whether Mumma's home was "used to commit" the offense. This is thus not a situation in which the jury never made any of the findings required to establish forfeitability; rather, all of the elements except one—nexus—were submitted to the jury for its determination. Viewed from that perspective, this is a missing-element case and is directly analogous to *Neder*.

We therefore apply *Neder*'s harmless error standard, but with one important qualification that takes account of the differing burden-of-proof standards that apply in the forfeiture context. For cases in which the indictment seeks forfeiture, we have held that, once guilt for the underlying offense is established beyond a reasonable doubt, the Government need only "prove, by a preponderance of the evidence, a nexus between the property and the crime." *Mancuso*, 718 F.3d at 799 (citation omitted). Moreover, because there is no constitutional right to a jury determination of nexus, and any error in failing to submit that element to the jury entails only a violation of a rule and not a constitutional violation, *see supra* note 4, the "*Chapman* standard" for evaluating the harmlessness of

constitutional errors, which asks whether the error "was harmless beyond a reasonable doubt," *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)), does not apply. Instead, we apply "the more forgiving standard of review" for "nonconstitutional errors on direct appeal from federal convictions." *Id.* Under that standard, an error is harmless if the Government has shown that "it is more probable than not that the error did not materially affect the verdict." *United States v. Ehmer*, 87 F.4th 1073, 1128 (9th Cir. 2023) (citation omitted). Incorporating this lower standard of proof into the *Neder* harmless error standard, we conclude that the error here was harmless if it is more probable than not that any "rational jury would have found" that the property was forfeitable "absent the error," because the record reveals that there was no "evidence sufficient to support a contrary finding." *Neder*, 527 U.S. at 18–19.

Under this standard, any error here was harmless. In the district court, Mumma never meaningfully contested the forfeitability of his house, and instead argued (successfully) only that the requisite nexus had not been shown with respect to his *business*. Indeed, in his written opposition to the Government's forfeiture application, Mumma's sole comment concerning whether nexus existed vis-à-vis his residence was the following concession: "Arguably, the defendant's residence was 'used' in capturing the visual depictions and may qualify as forfeitable property under section 2253(a)(3)." At the November 4 sentencing hearing, Mumma's counsel likewise effectively conceded the factual

point that the house was "used" in the commission of the offense:

> I understand the law to be that the three areas where forfeiture is applicable in this type of case are controlled by 2253 . . . [and include] property used or intended to be used to commit or promote the offense, or traceable to that property. *The house, okay. All right.* I'm not going to—I don't think there's any Ninth Circuit cases allowing it that I've read, *but certainly that—the house was used*. But what was used that was sold as part of the business? The business was not sold. Assets were sold. . . . And none of those assets . . . sold . . . are traceable to the commission of this crime.

(emphasis added). When later asked whether there was a dispute as to the forfeitability of the house, counsel for Mumma again declined to raise any factual dispute, but merely noted that there was no Ninth Circuit case on point:

> [T]here's no Ninth Circuit that—we're objecting because I couldn't find a Ninth Circuit case. There are cases in other districts, frankly, that counsel has cited that allow it save and except from the jury question, *the house argument, obviously, doesn't carry the same weight as the argument regarding the business assets, frankly, no*.

(emphasis added).

Likewise, on appeal, Mumma's opening brief presents no argument to support the view that a rational jury would have found that the nexus requirement was *not* satisfied as to Mumma's house. His opening brief's only argument as to the forfeitability of his house is that he had "lawfully purchased, owned, and sold" his house, which "was not the illicitly obtained proceeds from criminal acts." But the Government did not seek forfeiture of the house on the theory that it represented the "*proceeds* obtained from such offense." 18 U.S.C. § 2253(a)(2) (emphasis added). Rather, the Government sought forfeiture on the ground that the house was an *instrumentality* of the offense—*i.e.*, that it was "used to commit . . . [the] offense" and that the funds from the sale of the house were "property traceable to such property." *Id.* § 2253(a)(3). Mumma's brief contains no argument to support the view that his house was not "used" in the offense.

Moreover, not only is the nexus issue here effectively uncontested, but also the evidence that the home *was* used to commit the crime found by the jury is overwhelming. The *sole* factual basis for the commission of the offense was that Mumma had placed hidden cameras in his stepdaughter's bedroom *in his home*. Under these circumstances, we readily conclude that it is more probable than not that any reasonable jury would have found nexus if specifically instructed as to that element. Indeed, the evidence of nexus is so incontestable here that it satisfies even the stricter standard for harmlessness in missing-element cases advocated by Justice Scalia (and rejected by the Court in *Neder* as too strict). Under Justice Scalia's approach, a failure to instruct a jury as to a missing element is harmless only "[w]here the facts *necessarily found* by the jury (and not those merely discerned by the appellate court) support

the existence of the element omitted." *Neder*, 527 U.S. at 35 (Scalia, J., concurring in part and dissenting in part). On the record in this case, in which the only factual predicate for guilt presented at trial rested on the hidden cameras in Mumma's stepdaughter's bedroom, the jury's guilty verdict on the underlying offense *necessarily* found that Mumma had placed cameras there for the statutorily forbidden purpose. The jury thus necessarily found the facts that subsume the nexus finding as to which the jury was not instructed.

Because it was uncontested and incontestable that, if Mumma committed the offense, he used his home to do so, we have little difficulty holding that it is more probable than not that any rational jury would have found the nexus requirement to be satisfied as to Mumma's home. Any violation of Rule 32.2 with respect to whether to submit the nexus issue to the jury was therefore harmless in this case.

## IV

Mumma also challenges the district court's determination of the amount of restitution. We review restitution orders for an abuse of discretion, but we review any underlying legal issues de novo and the district court's factual findings for clear error. *United States v. Lazarenko*, 624 F.3d 1247, 1249 (9th Cir. 2010) (citations omitted).

Mumma contends, and the Government concedes, that the district court made an apparent mathematical error in totaling up the components of the restitutionary requests made by the victim, M.V., because the district court's total is $2,500 higher than the sum of those component parts. The Government argues, however, that any issue concerning the calculation of the amount of restitution is moot, because Mumma has already paid the entire restitution award

(including the excess $2,500), and it has been disbursed to M.V. According to the Government, under *United States v. Hayes*, 385 F.3d 1226 (9th Cir. 2004), the Government cannot be ordered to "return money it no longer has." *Id.* at 1230. Mumma argues that *Hayes* is distinguishable, because the disbursement of the funds to the victim in that case occurred after the judgment was affirmed on appeal, and *Hayes* itself distinguished a Louisiana case in which (as here) the Government distributed the funds during the defendant's direct appeal. *Id.* at 1228, 1230 n.5 (distinguishing *United States v. Beckner*, 16 F. Supp. 2d 677, 679 (M.D. La. 1998)).

We need not resolve the specific question whether the Government can be ordered to return the excess funds. The issue raised on appeal is whether the restitution order rests on an incorrect calculation, and that issue is not moot if we can "grant *any* effectual relief whatever to the prevailing party." *Gutierrez v. Saenz*, 606 U.S. 305, 320 (2025) (emphasis added) (simplified). As Mumma notes, the victim has a pending civil suit against him, and a ruling from this court that the amount of restitution was overpaid by $2,500 would give him the ability to seek an offset against any damages that the victim might recover in that civil action. That possibility is enough to save this issue from mootness, even if the occurrence of that eventuality "is not assured." *Id.* Accordingly, we must, at a minimum, remand the restitution order to the district court with instructions to correct this mathematical error.

Mumma also objected to the restitution order below on the ground that it was unclear whether the victim had included the "down payment" that her mother made on a home in calculating the component of the requested restitution award covering the housing-related expenses

incurred by the victim after she and her mother moved out of Mumma's house. According to Mumma, those expenses should have been limited to the temporary housing expenses the victim incurred until securing a new long-term residence. *See* 18 U.S.C. § 2259(c)(2)(C) (including "temporary housing" expenses among those that can be covered by a restitution order in a child pornography case). The Government argues that the down payment was not included in this item of the victim's restitution request, but the Government does not point to any evidence in the record that makes that clear, and the district court made no specific finding on this point in response to Mumma's objection. We need not resolve whether this issue, standing alone, would have required a remand. Given that we must in any event remand for recalculation of the amount of restitution to address the district court's arithmetic error, we also direct the district court on remand to clarify and resolve this discrete issue concerning the calculation of the victim's temporary housing expenses.

* * *

For the foregoing reasons, we vacate the district court's restitution order and remand with instructions to eliminate the excess $2,500 that was erroneously included and to recalculate, as necessary, the victim's temporary housing expenses covered by the order. In all other respects, we affirm the district court's judgment and sentence, including the order of forfeiture.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**